Alice LESHER, Charles Lesher, Plaintiffs,

v.

Hon. Frank G. LAVRICH, Wellington Chapman, Ruth Baker, Toby Freeman, Brad Welch, Barbara Griffin, Anthony J. Celebrezze, Jr., Defendants.

No. C83–3411.

United States District Court, N.D. Ohio, E.D.

Sept. 13, 1984.

Robert M. Fertel, Cleveland, Ohio, for Alice Lesher.

Steven G. Janik, Susan Gard, Cleveland, Ohio, for Frank G. Lavrich, Wellington Chapman, Ruth Baker, Toby Freeman, Brad Welch and Barbara Griffin.

Jeffrey J. Jurca, Richard A. Green, Asst. Attys. Gen., Columbus, Ohio, for Celebrezze.

## MEMORANDUM OF OPINION AND ORDER

KRENZLER, District Judge.

This action was commenced on August 16, 1983. Plaintiffs filed an amended complaint on November 4, 1983, alleging that defendants violated their constitutional and federal statutory rights under 42 U.S.C. § 1983, and the Adoption Assistance and Child Welfare Act, 42 U.S.C. § 627(b)(3). This action arises out of incidents in June 1983, when the Geauga County Welfare Department obtained emergency custody of plaintiff Alice Lesher's two daughters and retained custody of these children up to and following a court finding that one child was an "abused" child and the other was a "dependent" child under Ohio law.

Jurisdiction in this action is based on 28 U.S.C. §§ 1331 and 1343.

In essence, plaintiffs contend that their constitutionally protected liberty interest in Alice Lesher's children as to custody and visitation rights has been denied to them without due process of law. Plaintiffs further allege that defendants failed to prevent or eliminate the need for removal of the children or to provide a family reunification plan immediately after the Welfare Department obtained emergency custody of the children. Plaintiffs contend that Adoption Assistance and Child Welfare Act, 42 U.S.C. § 627(b)(3) and the Fourteenth Amendment require that defendants provide such services for plaintiffs.

Plaintiffs finally attack several Ohio statutes which were applied in the Geauga County proceedings as violating their constitutional rights. Plaintiffs seek a declaratory judgment that Rule 7(F) of the Ohio Rules of Juvenile Procedure, and Ohio Revised Code §§ 2151.314, 2151.04(C), and 2151.412 are unconstitutional on their faces as violating the due process requirements under the Fourteenth Amendment of the United States Constitution.

Defendants in this action are as follows: (1) the Honorable Frank G. Lavrich, Common Pleas Judge who heard the abused child and dependant child complaints at issue in this action; (2) Wellington Chapman, Administrator of the Geauga County Welfare Department; (3) Ruth Baker, Director of Social Services for Geauga County; (4) Toby Freeman, Supervisor of the Welfare Department's Protective Unit; (5) Brad Welch, social worker for the Welfare Department who filed the abuse and dependant child complaints; (6) Barbara Griffin, social worker in charge of the visitation schedule between Alice Lesher and her two daughters; and (7) Anthony J. Celebrezze,

Jr., Attorney General of the State of Ohio who was made a party to the action under Ohio Revised Code § 2721.12 because the validity of state statutes has been challenged.

Pending before the Court are (1) a motion to dismiss or in the alternative for summary judgment, pursuant to Fed.R. Civ.P. 56, filed by County defendants Wellington, Chapman, Baker, Welch, and Griffin on November 9, 1983, (2) a motion for judgment on the pleadings filed by defendant Anthony J. Celebrezze, Jr. on November 21, 1983, and, (3) a motion to dismiss filed by Frank G. Lavrich on November 9, 1983.

Fed.R.Civ.P. 56 provides in pertinent part:

> A party against whom a claim, counter-claim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.
>
> \*    \*    \*    \*    \*    \*
>
> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The undisputed facts in this action as set forth in the pleadings, affidavits and exhibits are as follows.

Plaintiff Alice Lesher is the natural mother of two daughters, Francina Doyle and Katherine Doyle, who had attained the ages of six and four respectively at the time the alleged child abuse incident took place. Alice Lesher was divorced from the girls' natural father, Robert Doyle. Alice Lesher had custody of the girls and subsequently married Charles E. Lesher.

On June 24, 1983, on a regular scheduled weekend visitation with the girls, Robert Doyle discovered bruising on Francina's buttocks. Doyle took Francina to the Bainbridge Police Department, where Francina reported to Officer Tittl that the bruising was the result of a beating given her by her stepfather Charles E. Lesher on June 22, 1983. Officer Tittl photographed Francina's bruises. Subsequently, Dr. Ray Blackford examined Francina, at the emergency room of the Geauga Community Hospital, and confirmed the bruising, indicating that the marks were "compatible with sharp blows possibly from a belt." (Exhibit B).

On Monday June 27, 1983, Brad Welch, the County Welfare worker assigned to investigate the allegations of child abuse against Charles Lesher, examined Officer Tittl's report and photographs and interviewed Robert Doyle and the girls. Welch observed the bruises. Francina confirmed to Welch the story that the bruising was the result of a beating from Charles Lesher. Katherine informed Welch that her stepfather had hit her in the mouth in late 1982. Both girls indicated to Welch that they were afraid of their stepfather and did not wish to return to his home.

On the same day, Welch filed a complaint alleging that Francina Doyle was an abused child within the meaning of the Ohio Revised Code § 2151.031(B).[1] Welch also filed a complaint alleging that Katherine Doyle was a dependant child within the meaning of Ohio Revised Code § 2151.-04(C).[2] Both complaints asked the Court to enter an order of emergency custody and set the matter for a hearing on temporary custody.

---

**1.** Ohio Revised Code § 2151.031(B) defines an abused child as "any child who … is endangered as defined in section 2919.22." Under § 2919.22 as pertinent to this matter, a child is endangered if the child has been cruelly abused or has suffered excessive disciplinary measures which create a substantial risk of serious physical harm to the child.

**2.** Ohio Revised Code § 2151.04(C) defines a dependent child as "any child … whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship."

On June 27, 1983, Judge Lavrich entered orders requiring that Francina Doyle and Katherine Doyle be placed in the emergency custody of Geauga County Welfare Department and scheduled a hearing on June 29, 1983, at 10:00 a.m.

Brad Welch contacted plaintiffs Alice and Charles Lesher on June 27, 1983, and informed them that the complaints had been filed and the Emergency Custody Orders had been issued. On June 28, 1983, Welch talked with the Leshers. Both Leshers stated they had never used physical or corporal punishment on the girls. The Leshers refused to disclose to Welch any information that would have allowed him to contact the babysitter who cared for the girls the day following the alleged abuse incident.

During the time prior to June 29, 1983, hearing, the children remained with their father Robert Doyle.

On June 29, 1983, the matter came on for a hearing on the complaints filed by the Welfare Department alleging the abuse of Francina Doyle and the dependency of Katherine Doyle. Plaintiffs Alice and Charles Lesher attended the hearing, with counsel.

In her affidavit, plaintiff Alice Lesher states that the following events transpired at the hearing:

"I was advised by attorney ... that the judge had advised him in chambers that he was going to find probable cause based solely upon pictures presented by the prosecuting attorney ... I decided to have my attorney enter a stipulation of probable cause since he advised me that the judge would hold that there was probable cause no matter what evidence we presented to the contrary ... At the time I did not know the definition of the word 'stipulate'."

Alice Lesher entered in the stipulation of probable cause.

Based upon this stipulation, the Court found probable cause that Francina Doyle was an abused child and Katherine Doyle was a dependent child. The Court ordered that the children continue in the care and custody of the Geauga County Welfare Department. The Court also ordered, upon agreement of counsel, that the matter of the physical placement of the children, pending a final adjudication of abuse and dependency, would be reviewed at a subsequent hearing on July 20, 1983. The children remained with Robert Doyle until the July 20, 1983, hearing.

At this hearing on July 20, 1983, Charles and Alice Lesher were again represented by counsel. Upon consideration of the arguments of counsel, the Court determined that the girls should remain with Robert Doyle pending the final hearing on the abuse and dependency charges.

On August 4, 1983, Alice Lesher filed a motion for rehearing and request for immediate hearing.

On October 18, 1983, the matter came on for the final hearing on the complaints of abuse and dependency. Plaintiffs were represented by counsel at the hearing. Upon consideration of the evidence, presented by the parties, the Court found Francina Doyle to be an abused child as defined in § 2151.031(B) of the Ohio Revised Code and that Charles Lesher was the abuser. The Court further found Katherine Doyle to be a dependent child as defined in § 2151.04(C) of the Ohio Revised Code. The Court therefore ordered that the children be placed in the temporary custody of the Geauga County Welfare Department.

The Court denied Alice Lesher's motion for rehearing and request for rehearing on the basis that she was represented by counsel and had the opportunity to be heard at the hearings held on June 29, 1983, and July 20, 1983. The Court also concluded that plaintiffs were not entitled to a reunification plan with the girls until the children had been adjudicated abused and dependent because Ohio Revised Code § 2151.421 only requires a reunification plan after a final adjudication of abuse and dependency.

As to Alice Lesher's visitation rights with the girls, the Welfare Department im-

plemented a supervised visitation schedule on July 5, 1983. The schedule permitted a one-hour visit, two days a week. On August 18, 1983, the visitation schedule was expanded to two hours on a weekday and four hours on Saturdays.

Plaintiffs bring this action under the Adoption Assistance and Child Welfare Act, 42 U.S.C. § 627(b)(3) and 42 U.S.C. § 1983.

■ Section 627(b)(3) is contained within the statutory scheme in which the States receive federal funds for child welfare services. That States, however, receive the funds only after their child welfare programs meet certain requirements. Section 42 U.S.C. § 627(b)(3) specifically provides for a reduction in the State's child welfare allotment unless that State:

(3) has implemented a preplacement preventive service program designed to help children remain with their families.

Plaintiffs contend that this statute and the accompanying federal regulations confer upon them a privately enforceable federal right to help from the state in retaining the custody of the girls. The Court concludes that § 627(b)(3) is merely a funding statute enacted to encourage State child welfare services and does not confer upon individuals a federal right to preventive services or reunification plans when there is a child abuse problem within the family unit. This Court therefore lacks subject matter jurisdiction to hear an action against defendants under 42 U.S.C. § 627(b)(3). Thus, plaintiffs' claims under this statute are hereby dismissed.

Plaintiffs also bring this action under 42 U.S.C. § 1983, which allows for recovery for the deprivation of a federally protected right, if such deprivation has been committed under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Defendants, by acting in compliance with and applying state law within their official capacities, acted under color of state law in the process of removing the children from Alice Lesher's custody.

Since the Court has concluded that plaintiffs have no federal statutory right, the issue before the Court is whether defendants violated plaintiffs' rights as protected under the United States Constitution.

Plaintiffs challenge certain statutes applied in the proceedings as violating procedural due process requirements under the Fourteenth Amendment of the United States Constitution. Plaintiffs further contend that the actual process afforded to them in removing the children from Alice Lesher's custody violated their procedural due process rights as well.

Procedural due process applies only to the deprivation of constitutionally protected liberty or property interests. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Once the deprivation of a constitutionally protected liberty or property interest has been demonstrated, a court must determine whether a plaintiff was afforded adequate due process protection. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

■ Parents do have a constitutionally protected liberty interest in their children. The United States Supreme Court has held that parents' rights to the companionship, care, custody and management of their children is a constitutionally protected interest that "undeniably warrants deference and absent a powerful countervailing interest, [warrants] protection." *Lassiter v. Department of Social Services,* 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981), *quoting Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). Thus, plaintiff Alice Lesher has a constitutionally protected interest in the care and custody of her daughters. At odds with this interest in the instant action, however, is the State's equally important countervailing interest in protecting the health and welfare of minor children who are abused. The children could therefore be removed from Alice Lesher's custody if there was a problem with child abuse. The narrow issue before the Court as to all of plaintiffs' claims, there-

fore, is what process was due plaintiffs in removing the children from Alice Lesher's custody.

The statutes challenged by plaintiffs are as follows. Rule 7(F) of the Ohio Rules of Juvenile Procedure and Ohio Revised Code §§ 2151.314, 2151.04(C), and 2151.412. Plaintiffs contend that Rule 7(F) of the Ohio Rules of Juvenile Procedure and its statutory counterpart § 2151.314 are unconstitutional on their face as failing to provide plaintiffs with sufficient timely opportunity to present evidence on their right to possession of their children in violation of their due process rights. The Ohio Attorney General, in his motion for judgment on the pleadings contends first, that plaintiff cannot attack the procedural evidentiary devices provided in Rule 7(F) because Rule 7(F) was not in actuality applied in the instant action, since 7(F) applies only when the juveniles have been placed in detention or shelter care. Second, the Attorney General contends that, even if a Rule 7(F) hearing was held, plaintiffs were afforded the opportunity to present evidence but elected not to and were therefore not denied due process.

■ Plaintiffs assert that they may attack Rule 7(F) and its statutory counterpart § 2151.314 because Judge Lavrich's order, following the June 29, 1983, hearing specifically stated that "this cause came on for a hearing pursuant to Juvenile Rule 7(F)." (Exhibit K). Juvenile Rule 7(F) provides that a detention hearing be held within 72 hours after a child has been placed in detention[3] or shelter care[4] to determine whether detention or shelter care is required. No 7(F) detention hearing is necessary unless the child has been actually placed in detention or shelter care, rather than released to a parent or guardian.

In the instant action, Francina and Katherine had not been admitted to detention or shelter care, as defined in the Ohio Revised Code, before the June 29, 1983, hearing.

Instead, they had been placed with their natural father. Therefore, the hearing on June 29, 1983, although labelled a hearing pursuant to Rule 7(F), was, in substance, a hearing on the abuse and dependency complaints and not a Rule 7(F) hearing to determine whether detention or shelter care was required. The Court concludes that the operative facts in this action, rather than the labels, control. Since Rule 7(F) was not applied against plaintiffs in the Geauga County action, plaintiffs have no standing to attack the constitutionality of the rule or its statutory counterpart. Accordingly, defendant Celebrezze's motion for judgment on the pleadings as to Rule 7(F) is hereby granted for the reasons stated above. Plaintiffs' challenge to Rule 7(F) and § 2151.314 is hereby dismissed. Whether the hearing afforded plaintiffs in the instant action comported with due process will be discussed later in this opinion.

■ Plaintiffs also contend that Ohio Revised Code § 2151.04(C) fails to satisfy due process requirements because it is vague and permits judges to use their own subjective views in determining if a child is considered "dependent". Section 2151.04(C) provides in pertinent part that a dependent child includes any child "whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship."

This Court finds that the "interest of the child" standard set forth in § 2151.04(C) satisfies due process requirements based on the Sixth Circuit decision of *Doe v. Staples*, 706 F.2d 985 (6th Cir.1983), *reh'g denied*, 717 F.2d 953 (6th Cir.1983), *cert. denied*, 465 U.S. 1033, 104 S.Ct. 1301, 79 L.Ed.2d 701 (1984). In *Staples*, the court upheld the "welfare of the child standard" in a similar statute, § 2151.01 of the Ohio Revised Code, as not violating due process requirements. Accordingly, plaintiffs' challenge to the constitutionality of

---

**3.** Juvenile Rule 2(6) defines detention as "the temporary care of children in restricted facilities pending court adjudication or disposition, or execution of a court order."

**4.** Juvenile Rule 2(20) defines shelter care as "the temporary care of children in physically unrestricted facilities, pending court adjudication or disposition or execution of a court order."

§ 2151.04(C) fails as well and is hereby dismissed from this action.

Finally, plaintiff challenges Ohio Revised Code § 2151.412 as being unconstitutional on its face as not requiring a timely reunification plan for the family in violation of due process of law under the Fourteenth Amendment. Plaintiffs in essence contend that § 2151.421 infringes upon plaintiffs' right to associate with their children by failing to provide a plan to reunite the family during the time after the children were removed from Alice Lesher's custody until the time of the final adjudication that Francina and Katherine were finally adjudicated abused and dependent children.

■ The narrow issue before the Court is whether the United States Constitution requires a county agency to provide a family reunification plan after a child has been removed from the family but before a final adjudication of abuse or dependency has been made. Section 2151.421 in fact requires a reunification plan only after final adjudication.

The Court concludes that procedural due process does not place an affirmative duty upon the government to provide such a plan pending final adjudication of abuse and dependency. Thus, § 2151.421 is not unconstitutional on its face. Accordingly, plaintiffs' challenge to § 2151.421 fails and is hereby dismissed from this action.

Plaintiffs further contend that the actual process afforded to them in removing the children from them also constituted an infringement upon their liberty interest in the children without procedural due process. In their motion for summary judgment, the County defendants contend that there has been no deprivation of a constitutional right because the process afforded to plaintiffs in the removal of the children met due process requirements.

Due process has two aspects—form and substance.

■ The form of due process is set forth in the law by statutes and/or rules and regulations. The substance of due process is satisfied or not satisfied by what happens in fact. Because a statute, regulation, or rule provides for notice and an opportunity to be heard does not mean that, in fact, there was due process. Due process requires both the form for providing due process as well as timely due process. It is thus necessary for the courts to look at the operative facts in order to determine if the due process requirement is satisfied. Unreasonable delays in affording a hearing and a decision by a state or local governmental agency does not afford due process. The requirement of due process is only satisfied when the state or local agency affords a party a fair and timely hearing and decision without unreasonable and unwarranted continuances and delays.

Thus, the defendants in this action cannot prevail in their contention that plaintiffs were afforded due process, unless they can show both that (1) plaintiffs were afforded reasonable notice and opportunity to be heard, and (2) that the opportunity to be heard was in a timely fashion without reasonable delays.

■ The Court concludes that the process afforded to plaintiffs was sufficient and that plaintiffs were not deprived of their procedural due process rights.

Brad Welch thoroughly investigated the matter before filing the complaints. Alice and Charles Lesher were given a prompt hearing before the Juvenile Court. Plaintiffs appeared with counsel at the hearing on June 29, 1983. At the hearing, Alice Lesher chose to enter into a stipulation of probable cause upon advice of counsel rather than to present evidence at the hearing. In her affidavit, Alice Lesher states that she entered the stipulation because her attorney had informed her that the children would be returned to her and because she did not understand the meaning of "stipulate". She further states that she attempted to withdraw the stipulation when she learned that the children would not be returned to them.

Nevertheless, plaintiffs were represented by counsel at the hearing. They chose not to offer evidence, but instead entered into a

stipulation of probable cause on the advise of their counsel. Furthermore, plaintiffs were given a second hearing three weeks later to review the placement of the children. Again, plaintiffs were represented by counsel. Only after consideration of the arguments of counsel did the Court determine that the children should remain with Robert Doyle. The final hearing on the complaints of abuse and dependency. was held within two months of the second hearing. Again, plaintiffs were represented by counsel. The entire matter was pending for less than four months, and upon the final adjudication of abuse and dependency, plaintiffs were entitled to a reunification plan under § 2151.421.

Finally, only six days following the June 29, 1983, hearing, the Welfare Department implemented a supervised visitation schedule for Alice Lesher to visit the girls. Six weeks later the Welfare Department expanded the number of hours Mrs. Lesher had with her daughters.

The Court concludes that the entire process in removing the children, and in scheduling visitation rights afforded plaintiffs ample and timely notice and opportunity to be heard and present evidence. The Court further concludes that the time framework in which plaintiffs were afforded this process was reasonable and timely. Therefore, defendants did not infringe upon plaintiffs' liberty interest in the children without due process of law. Since County defendants Wellington, Chapman, Baker, Welch and Griffin have not violated plaintiffs' constitutional rights, under 42 U.S.C. § 1983, their motion for summary judgment is hereby granted and the complaint is dismissed against them.

Finally, pending before the Court is defendant Frank Lavrich's motion to dismiss based on the doctrine set forth in *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) of absolute judicial immunity from damages liability. Defendant Lavrich's motion to dismiss fails to the extent that plaintiffs seek injunctive and declaratory relief as to actions taken by defendant Lavrich. Accordingly, the Court overrules defendant Lavrich's motion to dismiss to the extent that plaintiffs seek injunctive and declaratory relief.

Nevertheless, as to defendant Lavrich, a court may properly on its motion dismiss an action where the defendant is in a position similar to that of a moving defendant. *Silverton v. Department of Treasury*, 644 F.2d 1341 (9th Cir.1981). The Court's determination that plaintiffs' constitutional rights were not violated in the process afforded to them in the Geauga County proceedings applies equally to defendant Lavrich. Accordingly, the Court dismisses the complaint against defendant Lavrich. The Court will enter judgment in favor of all defendants and against plaintiffs in this action.

Also pending before the Court is plaintiffs' motion for summary judgment, preliminary injunction, and to join a new party defendant, filed on August 31, 1984. Although plaintiffs frame this action as a § 1983 action for relief from violations of their constitutional rights, plaintiffs are, in essence, attempting to use this action as a vehicle to resolve the substantive issues in a custody dispute. Substantive child custody issues are appropriately determined in the State court system, including the State appeal process. This Court has jurisdiction under § 1983 only to consider violations of plaintiffs' constitutional rights. Therefore, if the State process affords due process to plaintiffs in this action, it is inappropriate for this Court to interfere with the substantive State custody issues. At this time, the Court finds no violations of plaintiffs' constitutional rights. For the above-mentioned reasons, the Court overrules plaintiffs' motion for summary judgment, preliminary injunction, and to join a new party defendant.

IT IS SO ORDERED.