OPINION
Appellants, Denise Armstrong and David Borders, appeal from a Brown County Court of Common Pleas, Juvenile Division, judgment entry granting permanent custody of their child to the Brown County Department of Jobs and Family Services ("BCDJFS").
Christina Borders is appellants' sixteen-year-old daughter. She was first placed with BCDJFS in February 1993. This placement was made voluntarily by appellants, and the agency placed Christina with Armstrong's parents for five months. Later in 1993, an allegation that Armstrong abused Christina was substantiated. Christina was then placed in the temporary custody of Borders. She lived with her father for some time, until Borders decided he could no longer care for her. He relinquished temporary custody to BCDJFS, which placed Christina with her maternal grandparents. Christina was reunified with her mother in August 1995, and protective supervision continued through September 1996, at which time the case was closed.
In December 1996, BCDJFS received a complaint which alleged that Christina had been sexually abused. The abuse was substantiated and Christina was placed in the temporary custody of BCDJFS which placed her in a therapeutic foster home. She was later moved to another foster home at the original foster parents' request. She was again reunified with her mother in January 1998.
A little more than two months later, BCDJFS received a second complaint alleging that Christina had been sexually abused. The alleged perpetrator was Luther Taylor, Armstrong's seventy-one-year-old boyfriend, who was the alleged perpetrator in the prior incident, less than a year earlier. In spite of this, and the fact that Armstrong had been advised by BCDJFS not to allow Taylor to have contact with Christina, Armstrong left the two alone and unsupervised while she attended to other things. Christina was removed from appellant's home and placed in the temporary custody of BCDJFS, which again placed her in a foster home. The sexual abuse complaint was ultimately substantiated and on November 4, 1998, Christina was adjudicated an abused, neglected and dependent child. A case plan was formulated with the goal of reunifying Christina with her mother. However, Armstrong failed to complete most of the case plan requirements. She never completed parenting classes and failed to follow through with referrals for mental health services. Borders was not included in the case plan.
From March 1998 to December 1998 Christina was placed in several different foster homes. In December 1998 she was declared a ward of the court and placed with Child Focus. She was removed from the program in December 1999, due to her hyper-sexualized behavior. She was placed with a new foster family, and approximately one year later, moved to yet another foster home. Christina's continued moves were substantially related to her inappropriate sexual behavior and personal hygiene problems, and in one case due to her inappropriate sexual contact with a foster sibling. Her behavior frequently deteriorated after visits with her mother. Armstrong's visitations were ultimately discontinued for this reason. Throughout this time Borders had only very sporadic contact with Christina.
On January 23, 2001, BCDJFS moved for permanent custody of Christina. Although Borders was notified at a February 26 pre-trial hearing that a hearing on the motion would take place on July 16-20, he failed to appear for the final hearing. Armstrong appeared for a portion of the hearing, under subpoena, but did not enter the courtroom or testify. Both parents were represented by counsel and Christina was represented by a guardian ad litem. The trial court rendered a decision on August 21, 2001, granting the motion of BCDJFS and terminating the parental rights of Armstrong and Borders. Both appeal the trial court's decision.[1]
Appellant-Borders' first assignment of error:
 THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY OF THE APPELLANT-FATHER'S MINOR CHILD TO THE BROWN COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE THE AGENCY'S FAILURE TO INCLUDE APPELLANT IN A CASE PLAN VIOLATED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW AND CONTRAVENED THE POLICY OF OHIO REVISED CODE CHAPTER 2151.
Borders argues that BCDJFS had an affirmative duty pursuant to R.C.2151.412 to include him in the case plan and that the failure to do so deprived him of due process of law. Essentially, Borders contends that BCDJHS was required to amend its case plan to seek to unify him with Christina. We disagree.
In 1989, the Ohio General Assembly amended R.C. 2151.412 to eliminate the requirement of preparation of comprehensive reunification plans. SeeIn re Kwanza Lee Stevens (July 16, 1993), Montgomery App. No. 13523. As amended, R.C. 2151.412 calls for the preparation of case plans for children in temporary custody having one of the following general goals:
 Consistent with the best interest and special needs of the child, to achieve an out-of-home placement in the least restrictive, most family-like setting available and in close proximity to the home from which the child was removed or the home in which the child will be permanently placed:
(b) To do either of the following:
 (i) With all due speed eliminate the need for the out-of-home placement so that the child can return home;
 (ii) If return to the child's home is not imminent and desirable, develop and implement an alternative permanent living arrangement for the child.
Consistent with the best interest and special needs of Christina, BCDJFS designed the case plan, first to reunify Christina with her mother, then modified the case plan to secure an alternative permanent living arrangement for her. See R.C. 2151.412(F)(1)(b)(ii). In as much as this goal is sanctioned under R.C. 2151.412, we cannot say that BCDJFS acted to deprive Borders of due process of law under the United States Constitution, by failing to include him in the case plan. Accord In reMary Beth v. Howard (Oct. 12, 1995), Cuyahoga App. No. 67995, 1995 WL 601110 at *12. See, also, Lesher v. Lavrich (N.D.Ohio. 1984),632 F. Supp. 77 (procedural due process does not place affirmative duty upon government to provide family reunification plan after child has been removed from family but before final adjudication of abuse or dependency); Doyle v. Lesher (Oct. 26, 1984), Geauga App. No. 1147. But, see, Isaac v. Montgomery Co. Children Services Bd. (Dec. 14, 1994), Montgomery App. Nos. 14140, 14200 (only the inability to locate a parent may relieve an agency of the minimal burden to attempt to include parents in a case plan).
The record indicates that Borders was served with the dependency complaint, the complaint for permanent custody, and all other materials relevant to the permanent custody proceeding. An attorney was represented to appoint him in this matter. In spite this, Borders failed to participate in the proceeding, neglecting even to appear at the final hearing. Under these facts, we find no violation of Borders' due process rights. Borders' first assignment of error is overruled.
Appellant-Borders' second assignment of error:
 THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY OF THE APPELLANT-FATHER'S MINOR CHILD TO THE BROWN COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH A DECISION.
In his second assignment of error, Borders contends that there was insufficient evidence to support the trial court's finding "that the minor child could not be placed with appellant [Borders] within a reasonable period of time or should not be placed with appellant [Borders]."
Because a parent's constitutionally protected liberty interest is at stake in a permanent custody case, due process requires that the state prove by clear and convincing evidence that applicable statutory standards have been met. Santosky v. Kramer (1982), 455 U.S. 745, 769,102 S.Ct. 1388, 1403. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Id. at 479.
When considering a permanent custody motion, the trial court must determine by clear and convincing evidence whether the child can be placed with a parent within a reasonable time. R.C. 2151.414(B)(1). The trial court is required to enter a finding that the child cannot or should not be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply. Each and every condition of R.C. 2151.414(E) does not have to exist before a court may terminate parental rights. See In re William S., 75 Ohio St.3d 95, 101,1996-Ohio-182. Rather, the court may make this determination based on any one of the factors. See id.
In making the finding that Christina could not or should not be placed with Borders within a reasonable time, the trial court clearly considered R.C. 2151.414(E)(4), which states as follows:
 The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
The trial court concluded that Christina could not be placed with either parent, in part, due to "[t]he past history of parental indifference to the needs and safety of the child[.]" This finding is supported by clear and convincing evidence.
Although Borders had custody of Christina for a period of months in 1993, he eventually relinquished custody of her to BCDJFS because he was having marital difficulties and didn't feel he could care for her any longer. Borders made no significant effort to be involved in the permanent custody proceeding, failing to appear for the final hearing, even under subpoena. He failed to provide financial support for Christina for a period of years, accruing a child support arrearage exceeding $18,000. His only effort has been to request visitation with Christina two to three days prior to each scheduled hearing. However, he has failed to follow through with any of these requests. At one point he even indicated that he would relinquish his parental rights if the state would agree to eliminate his child support arrearage. Our review of the record reveals no conflict in the evidence. Because the trial court's finding is supported by clear and convincing evidence, we overrule Borders' second assignment of error.
Appellant-Armstrong's first assignment of error:
 THE TRIAL COURT ERRED BY NOT APPOINTING AN ATTORNEY TO REPRESENT THE CHILD.
A review of the record indicates that Armstrong failed to request that the trial court appoint an attorney to represent the child in the permanent custody proceeding. "[A]n appellate court will not consider any error which * * * [the complaining party] could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." In re Pieper Children
(1993), 85 Ohio App.3d 318, 328, citing State v. Glaros (1960),170 Ohio St. 471, paragraph one of the syllabus. Such errors are waived and may not be raised upon appeal. Id. Accordingly, we will review the assignment of error only for plain error. See id.
Under the plain language of R.C. 2151.352, indigent children are entitled to appointed counsel in all juvenile court proceedings. In reJanie M. (1999), 131 Ohio App.3d 637, 639, citing State ex rel. Asberryv. Payne, 82 Ohio St.3d 44, 48, 1998-Ohio-596. Generally, when an attorney is appointed as guardian ad litem, that attorney may also act as counsel for the child, absent a conflict of interest. R.C. 2151.281(H);In re Smith (1991), 77 Ohio App.3d 1, 14. However, because the roles of guardian ad litem and attorney are different, In re Baby Girl Baxter
(1985), 17 Ohio St.3d 229, 232, courts should not presume a dual appointment when the appointed guardian ad litem is also an attorney, absent an express dual appointment. In re Duncan/Walker Children
(1996), 109 Ohio App.3d 841, 844-845; In re Kenneth R. (Dec. 4, 1998), Lucas App. No. L-97-145.
In the present case, a guardian ad litem was appointed to represent Christina's best interest. The record reveals that the guardian ad litem was not specifically appointed as Christina's attorney. However, a review of the in camera interview of Christina reveals that the position advocated by the guardian ad litem as being in Christina's best interest was consistent with Christina's expressed desires. Thus, the failure to appoint counsel to represent Christina does not arise to the level of plain error. Had an attorney been appointed to represent Christina's interest, the attorney would have been obligated to advocate the same position argued by the guardian ad litem and ultimately accepted by the trial court. Armstrong's first assignment of error is overruled.
Appellant-Armstrong's second assignment of error:
 THE TRIAL COURT ERRED IN GRANTING THE AGENCY'S MOTION FOR PERMANENT CUSTODY WHEN A WORKING PLANNED PERMANENT LIVING ARRANGEMENT WAS IN PLACE AND THE GRANTING OF THE PERMANENT CUSTODY MOTION WOULD NOT BE IN THE BEST INTEREST OF THE CHILD.
Armstrong contends that permanent custody was not in the child's best interest as there was in place a workable planned permanent living arrangement ("PPLA"), and that granting permanent custody to BCDJFS would necessarily disrupt this placement.
We initially note that a PPLA was not in place as alleged by Armstrong. While Christina had been placed in a PPLA with the Beasley family, this placement was disrupted in December 2000, prompting BCDJFS to move for permanent custody. She has since been placed in the Breeze foster home. The Breezes have not entered into a PPLA.
We also note that granting permanent custody to the agency would not necessarily have the effect of disrupting Christina's current placement. Christina would not be removed from her present home immediately upon the trial court's decision granting permanent custody to the agency. Rather, the placement will continue while BCDJFS is required by statute to pursue an adoption of the child. And as conceded by Armstrong, the reality is that Christina will most likely not be adopted. She is a teenager, midway through high school, with significant social and sexual issues and psychological needs.
The record supports the trial court's conclusion that granting permanent custody to BCDJFS is in Christina's best interest. There was considerable testimony that Christina is unable to cope with changes in her life. Her contact with Armstrong had been contentious at best and had sometimes led to Christina acting out sexually and uncontrollably, resulting in continued disruptions in her foster placements. However, she has made considerable progress in the Breeze home: she is acting out infrequently, has improved her hygiene and social skills, and is doing well in school. Granting permanent custody to BCDJFS provides Christina with the opportunity to continue in her present placement, without the disruptions caused by continued contact with Armstrong and by continued court hearings. Armstrong's second assignment of error is overruled.
Appellant-Armstrong's third assignment of error:
 THE DECISION OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
When granting a motion for permanent custody, the trial court is required to make specific statutory findings. See In re William S.,75 Ohio St.3d 95, syllabus, 1996-Ohio-182. A reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. Id.
A court may terminate parental rights and grant permanent custody of a child to an agency if the agency meets a two-pronged test. See In reEgbert Children (1994), 99 Ohio App.3d 492; R.C. 2151.414. When a state agency moves for permanent custody, the trial court is required first to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(B)(2). In addition to determining the child's best interest, the court must determine whether the child can be placed with a parent within a reasonable time or should not be placed with the parent. Id. The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply.
Armstrong first contends that the trial court did not follow the statutory factors because it made findings relating to a nonapplicable portion of R.C. 2151.414(B)(1). Specifically, the trial court found that "reasonable efforts were made to prevent the need for placement." While this finding is indeed extraneous in the present case, Armstrong fails to indicate where the trial court's findings are deficient. The fact that the trial court's findings contain surplusage is not an indication that the trial court failed to follow the appropriate statutory factors. The trial court made findings related to the two necessary statutory factors: The trial court found that it was in the child's best interest that BCDJFS be granted permanent custody, and that the child had been in an out-of-home placement for the requisite period of time. The best interest finding, as it relates to Armstrong, was premised on her failure to protect the child in the past and on her own psychological issues.
Appellant also alleges that the trial court erred by finding that the child had been in an out-of-home placement "for twelve of the last twenty-four months" when R.C. 2151.414(B)(1)(d) requires a finding that the child be in an out-of-home placement for 12 of the prior 22 months. However, appellant concedes that "the state has sufficiently shown that the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period," as required by statute. Accordingly, we find this contention to be without merit. The trial court's misstatement is harmless error.
Appellant lastly contends that the weight of the evidence does not support the conclusion that it is in Christina's best interest that BCDJFS be granted permanent custody, stating that the trial court failed to consider the best interest factors enumerated in R.C 2151.414(D). However, it is apparent that the trial court considered all relevant factors as required by statute. The trial court considered that Armstrong exhibited a lack of interest in the matter, failing to appear for the final hearing, considered her "psychological and emotional makeup" which prevented her from providing a safe home environment, and that Armstrong demonstrated a marked lack of commitment to adequately providing for Christina's needs and safety. Because the trial court considered all the relevant statutory factors, we overrule Armstrong's third assignment.
Judgment affirmed.
POWELL and YOUNG, JJ., concur.
[1] We note that the brief filed by the state fails to conform with Loc.R. 11(D). Pursuant to Loc.R. 11(D), the nonconforming brief was stricken in an entry filed May 9, 2002.