OPINION
Appellant, Alfreda Jones, appeals a judgment entry of the Butler County Common Pleas Court, Juvenile Division, granting permanent custody of her two children, Ajaye Jones and Davia Jones, to appellee, the Butler County Children Services Board ("BCCSB"). We affirm.
Appellant has had a chronic crack cocaine addiction for approximately eight years. Ajaye Jones was born to appellant on July 18, 1995. Both appellant and Ajaye tested positive for cocaine shortly after the child's birth. Two of appellant's older children, Trey and Natalia, had also tested positive for cocaine at birth. Appellant lost custody of both of these children and a third child, Ramel, due to her cocaine addiction.[1] After her birth, Ajaye was placed in the temporary custody of a foster mother.
Appellant underwent inpatient drug treatment at a program called Sojourner from July 1995 through October 1995. While in the program, appellant became pregnant with Davia Jones. Appellant tested positive for cocaine while pregnant with Davia. Appellant did not complete the program at that time. In May 1996, appellant re-entered Sojourner's program and continued on to complete it. Appellant remained drug-free, or "clean," for a total of fourteen months, which included a period of approximately nine months after finishing Sojourner's aftercare program.
Davia Jones was born on June 27, 1996. Appellant retained custody of Davia after her birth. In April 1997, appellant regained custody of Ajaye. In October 1997, appellant relapsed and again began to use cocaine. When caseworker Tosha Barnes made an unexpected visit to appellant's home, she found two-year-old Ajaye and fourteen-month-old Davia dirty and hungry while appellant slept at one o'clock in the afternoon. Barnes, who suspected that appellant was again using cocaine, facilitated a urine drug screen. Appellant tested positive for cocaine. Since the whereabouts of each child's father was unknown, BCCSB gained temporary custody of both Ajaye and Davia on October 21, 1997. Ajaye had been in appellant's custody for only six months since her birth.
On October 21, 1997, BCCSB filed its first motion for permanent custody of Ajaye and Davia under R.C. 2151.414. In an interim order, the court ordered appellant to continue in her drug treatment and maintain sobriety. The court also continued the children's temporary custody with foster parents and allowed appellant visitation. The court deferred disposition of its permanent custody determination while appellant continued in her attempts to complete drug treatment programs and maintain sobriety.
In December 1997, appellant entered a treatment program at Horizon Services of Fort Hamilton Hospital, where she had previously been treated for drug dependency in August 1991. Appellant attended three sessions in December 1997 and January 1998. While in the program, appellant tested positive for cocaine on two occasions. When appellant failed to appear for an appointment, she was terminated from the program for her lack of attendance and the positive drug screens.
While Ajaye and Davia were in foster care, appellant attended visitation regularly. Appellant acted lovingly and appropriately during her visits with Ajaye and Davia and frequently brought the children gifts. Both children recognized appellant as their mother and showed normal affection.
The court held a hearing on BCCSB's permanent custody motion on June 26, 1998. Barnes testified that appellant admitted that she had used drugs in May 1998, and Barnes suspected appellant had used drugs thereafter. However, the court found that the children's current foster home would not provide them with a legally secure placement. Despite appellant's continued drug use, the court denied BCCSB's first request for permanent custody on July 10, 1998. The court continued temporary custody of the children in BCCSB.
Appellant entered Sojourner's drug treatment program for the third time on July 23, 1998. Her initial drug urine screen was positive for cocaine. Although appellant made good progress, she failed to return and was terminated from Sojourner's program on November 2, 1998. After appellant was terminated from Sojourner's program, the court found her in contempt of court. Appellant was incarcerated in Butler County Jail's Resolutions facility until January 20, 1999. On her release, however, appellant did not follow the court's order to attend an intensive outpatient drug treatment program. The court again found appellant in contempt and ordered her incarcerated for sixty days.
BCCSB filed a second motion for permanent custody of the children on February 16, 1999. While that motion was pending, appellant again entered Horizon's outpatient drug treatment program on March 25, 1999. Appellant continued in the program until April 19, 1999. During that time, appellant tested positive for cocaine on five occasions. Appellant missed eight of fourteen appointments; she missed several appointments because she was in jail. When appellant refused to provide another urine sample for a drug screen, Horizon involuntarily terminated her from the program, recommending a higher level of treatment.
On April 30, 1999, pursuant to the court's order, appellant contacted yet another drug treatment program operated by Comprehensive Counseling Services. Appellant began to attend the program's sessions, then "disappeared." Because of her absence, Comprehensive Counseling restarted appellant in the program on May 17, 1999. Appellant again failed to return to the program. On June 4, 1999, appellant restarted Comprehensive Counseling's program for a third time, instead of simply continuing in it, because she had again tested positive for cocaine. Appellant admitted that she had relapsed, using cocaine between May and June 1999. Comprehensive Counseling recommended a higher level of drug treatment for appellant, such as a halfway house or residential treatment.
A magistrate held a second permanent custody hearing on July 6, 1999. The fathers of Ajaye and Davia, Terry Clay and Elmo Boyd, respectively, had been notified of the hearing date by publication, but neither man appeared. The magistrate heard evidence from Barnes, representatives of the drug treatment programs appellant had attended, the children's foster mother, and the children's guardian ad litem ("GAL").[2] The court also considered appellant's testimony, in which appellant admitted that she had used cocaine approximately two weeks earlier. She testified that she had relapsed in cocaine use approximately ten times since the June 1998 permanent custody hearing.
On September 16, 1999, a magistrate granted permanent custody of Ajaye and Davia to BCCSB.[3] The court adopted the magistrate's decision on October 28, 1999. Appellant now appeals the determination awarding permanent custody to BCCSB.
Assignment of Error No. 1:
 THE TRIAL COURT'S DECISION TO GRANT BCCSB PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
Appellant argues that BCCSB did not introduce clear and conincing evidence to support this determination. BCCSB argues that clear and convincing evidence shows permanent custody of Ajaye and Davia is appropriate.
When granting a motion for permanent custody, the trial court is required to make specific statutory findings. See In reWilliam S. (1996), 75 Ohio St.3d 95, syllabus. A reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. Id.
A court may terminate parental rights and grant permanent custody of a child to an agency if the agency meets a two-pronged test. See In re Egbert Children (1994), 99 Ohio App.3d 492, 495; R.C. 2151.414.[4] When a state agency moves for permanent custody, the trial court is required first to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In making the best interest determination, the trial court must consider all relevant factors, including, but not limited to, the following factors enumerated in R.C. 2151.414(D):
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
The agency must show by clear and convincing evidence that a grant of permanent custody is in the best interest of the child. R.C. 2151.414(B). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
The court made specific findings relating to each of the above factors in turn and concluded that it would be in the children's best interest to award permanent custody to BCCSB. First, the court assessed the children's relationships with appellant and their foster mother, who wished to adopt them. The court noted that appellant has a deep and appropriate relationship with the children, who recognize her as their mother. Yet, the court also considered appellant's chronic and serious drug dependency, which had required the removal of Ajaye, Davia, and her other children. The court recognized that, by her own admissions, appellant had relapsed in drug treatment at least ten times since the first permanent custody hearing in 1998, and as recently as two weeks before the second permanent custody hearing in July 1999.
The court also found that the children were doing well in the care of their foster mother, who was a classroom teacher certified to teach severely behaviorally handicapped children. Both Ajaye and Davia, who had some behavioral problems, had made tremendous progress in her care. She was interested in adopting both children if permanent custody was granted.
Next, the court considered the second statutory factor, the children's wishes, as expressed through the recommendation of their GAL that permanent custody be granted. The court then went on to consider the third factor, the children's custodial history. Both children had been in foster care, instead of appellant's custody, since October 1997. Ajaye had been in and out of appellant's care twice since birth.
Finally, the court considered the fourth statutory factor, the children's need for a legally secure permanent placement and whether that type of placement could be achieved without a grant of permanent custody to the agency. The court found that, if permanent custody was not granted, appellant was the children's only hope of legally secure placement. Given appellant's history of chronic substance abuse and relapse, however, the court found it likely that her ability to care for Ajaye and Davia would be compromised in the future, and no credible evidence indicated that a new attempt to stay "clean" would be successful.
On the other hand, if permanent custody was granted, the children's new foster mother, with whom they had settled well and bonded, could adopt them. The court found that such an adoption could provide the children with their only reasonable hope of obtaining a permanent placement.
The court made findings for each of the statutorily required factors to determine the best interests of Ajaye and Davia. Each of the court's findings is supported by abundant evidence in the record. Clear and convincing evidence supports the court's determination that permanent custody would be in the children's best interest.
In addition to determining the child's best interest, the court must make a second determination before granting permanent custody: it must determine whether the child can be placed with a parent within a reasonable time. R.C. 2151.414(B)(1). The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply, including the following:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year * * * .
* * *
(12) Any other factor the court considers relevant.
 The court in the present case specifically enumerated these sections of R.C. 2151.414 as applicable to appellant and set forth the facts that supported its findings. The court first noted that Ajaye and Davia had been removed from appellant's home because she could not care for them when she was using cocaine. Yet, appellant had not rid herself of her cocaine addiction.
The court observed that appellant had been in and out of numerous treatment programs since each child's birth. Although appellant had completed one drug treatment program, by her own admissions, appellant had repeatedly relapsed as recently as two weeks before the second permanent custody hearing. The record supports the court's conclusion that appellant had continuously and repeatedly failed to substantially remedy her cocaine addiction, which had caused the children's placement outside her home.
Moreover, the court found no reason to believe that appellant could achieve sobriety within one year so that Ajaye and Davia could be placed with her. As evidence by numerous drug treatment records, appellant had been addicted to cocaine for at least eight years. Although she had experienced some periods of sobriety, those periods had ended in relapse despite numerous efforts by BCCSB, the court, and various treatment programs.
The record sufficiently supports each of the court's findings. The court's best interest determination is supported by clear and convincing evidence. Likewise, the court's determination that Ajaye and Davia could not be placed with appellant within a reasonable time is supported by clear and convincing evidence. We find no abuse of discretion by the trial court in its application of R.C. 2151.414. Accordingly, appellant's assignment of error is overruled.
YOUNG, P.J., and VALEN, J., concur.
[1] Trey was placed in his father's custody. BCCSB was granted permanent custody of Natalia and Ramel, and both children were adopted.
[2] Appellant and BCCSB stipulated that the court could consider all of the evidence it had heard in the first permanent custody hearing in making its second determination.
[3] The magistrate entered an order granting permanent custody on August 19, 1999. Appellant objected to the law the magistrate used to reach that conclusion. As a result of this objection, the court remanded the case to the magistrate with an order to use the law existing at the time BCCSB filed the motion for permanent custody. The magistrate then entered the revised September 16, 1999 judgment, which is the subject of this appeal.
[4] R.C. 2151.414 was amended by H.B. 484 effective March 18, 1999. We held that the amended statute could be retroactively applied under certain circumstances. See In re Rodgers (June 5, 2000), Preble App. No. CA99-08-017, unreported. In this appeal, however, neither BCCSB nor appellant contends that the amended version of R.C. 2151.414 applies in lieu of the previous version of the statute that the court used in this case.