JOURNAL ENTRY AND OPINION.
{¶ 1} L.A. appeals from an order of the juvenile court awarding permanent custody of her children to Cuyahoga County Department of Children and Family Services ("CCDCFS"). On appeal, her sole assignment of error states:
 {¶ 2} "The trial court committed reversible error by failing to require the input of a psychiatrist on the behalf of the appellant where the appellant's mental health was clearly at issue and fully known by the appellee to be at issue for years prior to an award of permanent custody in violation of the due process clause of the United States Constitution and the due course of law provision of the Ohio Constitution."
 {¶ 3} After reviewing the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.
 {¶ 4} The record reflects CCDCFS filed a complaint against L.A. alleging neglect and dependency and requesting a disposition of permanent custody of her two children.
 {¶ 5} At the permanent custody hearing, the court heard testimony from two social workers, a Metrohealth Medical Center parenting coordinator, and the mother. The social workers testified about the mother's failure to follow through with several referrals for mental health counseling to deal with her mood swings and other emotional problems, the lack of bonding with her children, and the children's special needs relating to their developmental delays. The social workers also testified regarding her current housing situation. The social workers' testimony in addition referenced certain psychological evaluations performed by Dr. Anuszkiewicz, who recommended the mother to join support groups and to obtain employment and a GED. Finally, the children's guardian ad litem reported his determination that the children cannot be returned home within a reasonably near future and recommended that permanent custody be granted.
 {¶ 6} Our review of a custody determination by the juvenile court begins with the recognition that the court's exercise of discretion should be accorded "the utmost respect,"[1] taking into account that "the knowledge gained through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record."[2] "A court exercising Juvenile Court jurisdiction is invested with very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment."[3]
 {¶ 7} R.C. 2151.414 sets forth a two-prong analysis to be applied by the juvenile court for a determination of whether permanent custody should be granted to an agency. The statute requires the court to find, by clear and convincing evidence, (1) one of the factors enumerated in R.C. 2151.414(B)(1) to exist, and (2) an award of permanent custody to be in the best interest of the child. This statute states:
 {¶ 8} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 9} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 10} "(b) The child is abandoned.
 {¶ 11} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 12} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 13} Moreover, to make a determination in accordance with R.C.2151.414(B)(1)(a) of whether a child cannot be placed with either parent within a reasonable time or should not be placed with the parents, R.C.2151.414(E) requires the court to consider all relevant evidence. It states:
 {¶ 14} "(E) In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. * * *
 {¶ 15} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
 {¶ 16} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child * * *;
 {¶ 17} "* * *
 {¶ 18} "(11) The parent has had parental rights involuntarily terminated pursuant to this section * * *."
 {¶ 19} The only error L.A. assigns in this appeal is the court's failure to appoint a psychologist to assist her in her defense of the permanent custody matter.
 {¶ 20} This very issue was addressed in In Re Brown.[4] There, the appellant mother had been diagnosed a chronic schizophrenic and the court awarded permanent custody after finding her mental illness interfered with her ability to provide parental care to her child. The issue for resolution on appeal concerned whether due process mandates the appointment of a psychiatric expert to assist an indigent parent in permanent custody proceedings in which the parent's mental health is at issue. The First District answered in the affirmative, explaining that when an indigent parent in a permanent custody proceeding was faced with an allegation of mental illness, the assistance of a psychiatric expert is imperative to his or her ability to counter that allegation.
 {¶ 21} Brown's analysis and holding were adopted by the Third District in In re Shaeffer Children.[5] In that case, the agency sought permanent custody also on the ground of the mother's mental and emotional problems and the trial court denied the mother's request for court-appointed psychiatric assistance. At trial, a psychiatrist testified for the agency as to the mother's mental condition and the resulting adverse effect upon her parenting ability, whereas the mother presented no evidence in this regard. The Third District concluded the mother's request for a court-appointed psychiatrist should have been granted. The court adopted Brown's holding, with the following clarification:
 {¶ 22} "We are not holding that due process requires the appointment of a psychiatric expert in every permanent custody proceeding where a parent's mental health is made an issue. However, in this case, because the indigent parent's mental or emotional health was clearly the predominant issue from the outset and ultimately became the determinative issue, and because the parent made a timely request for such assistance, we hold that the assistance of a court-appointed psychiatric expert was mandated by the Fourteenth Amendment to the United States Constitution and by Section 16, Article I of the Ohio Constitution."
 {¶ 23} Unlike in Brown and Shaeffer, the court's award of permanent custody in the instant case and the predicate "cannot or should not be placed" findings were not based on the existence of the R.C.2151.414(E)(2) factor, that is, that the mother suffered chronic mental illness or chronic emotional illness. Rather, the court made the "cannot or should not be placed" determination by finding the existence of two other statutory factors: (1)that she had failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home,[6] and, (2) that she has had parental rights involuntarily terminated with respect to a sibling of the children.[7] Because the parent's mental health in this case was not the predominant issue from the outset and did not ultimately become the determinative issue in the court's permanent custody analysis, the rationale in Brown and Shaeffer for the need of a psychiatrist does not apply here.[8] In those cases, the allegation that the parent's mental condition affected her ability to provide parental care was the basis of the agency's request of permanent custody; a psychiatrist's testimony was therefore necessary to counter that allegation. In contrast, an evaluation by an psychiatric expert of the mother's mental condition in the instant case could not have helped her defense: if she were found to suffer severe mental illness rendering her unable to care for her children, that assessment could only strengthen the agency's case; if, however, such an evaluation determined otherwise, it would not affect the court's "cannot or should not be placed" finding at all, because that finding was based on other statutory factors.
 {¶ 24} Because L.A.'s failure to remedy the conditions causing the children's removal and a termination of her parental rights regarding her other children formed the bases of the court's permanent custody decision, we conclude due process does not mandate the court to appoint a psychiatric expert to assist her in her defense of the instant permanent custody matter.
Judgment affirmed.
JAMES J. SWEENEY, J., and ANTHONY O. CALABRESE, JR., CONCUR.
[1] See In re Campbell (October 12, 2000), Cuyahoga App. Nos. 77552 and 77603, citing Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124; see, also, In re Awkal (1994), 95 Ohio App.3d 309, 316.
[2] Campbell, citing Goll.
[3] In re Pieper Children (1993), 85 Ohio App.3d 318, 330.
[4] (Nov. 26, 1986), Hamilton App. No. 850878
[5] (1993), 85 Ohio App.3d 683.
[6] See R.C. 2151.414(E)(1).
[7] See R.C. 2151.414(E)(11).
[8] See, also, In re Egbert Children (1994), 99 Ohio App.3d 492. In theMatter of Hess, Jefferson App. No. 02JE37, 2003-Ohio-1429; In the Matterof Jesus T., Lucas App. No. L-01-1423, 2002-Ohio-3023.